UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALEXANDER FRIDMAN )<br><br>Petitioner, )<br><br>v. )<br><br>JOSEPH HIGGS, Superintendent )<br>Rappahannock Regional Jail, )<br><br>Respondent. ) | No. 1:11-cv-1002 (AJT/JFA) |

## MEMORANDUM OPINION

This matter is before the Court on respondent's Motion to Dismiss Alexander Fridman's

Petition for Habeas Corpus [Doc. No. 4]. On July 28, 2009, Alexander Fridman ("petitioner" or

"Fridman") entered an Alford plea for two counts of Electric Means for Procuring Minors for

Sex, three counts of Reproduction/Distribution of Child Pornography, three counts of

Reproduction/Distribution of Child Pornography, Second or Subsequent Violation, and two

counts of Attempted Indecent Liberties. Pet. Ex. 1. The state court sentenced Fridman to eighty

(80) years of imprisonment, and all but fifteen (15) of those years were suspended. He claims

that the prosecution violated his *Brady* rights when it withheld material information about the

misconduct of the investigating officer who spearheaded Fridman's apprehension. For the

reasons stated herein, the Court grants the respondent's motion and Fridman's habeas petition is

dismissed.

### I. Background

Officer John Chapman ("Officer Chapman"), of the Dumfries, Virginia police

department, was a part of the Internet Crimes Against Children ("ICAC") task force, which is a

1

national program created to help law enforcement agents find predators who use online communications to sexually exploit children. With respect to Fridman's case, Officer Chapman posed as a 13-year-old boy named "David" and engaged in online communications with Fridman. As a part of those online communications, Fridman sent sexually explicit, child pornography images to "David," and attempted to meet "David." On July 28, 2009, Fridman entered his Alford plea. Fridman did not file any direct appeals of his conviction or sentence. Nor did he file a state petition for habeas corpus for the claim currently before the Court.

On July 22, 2010, a news story on InsideNova stated that Officer Chapman resigned in June 2010 due to violations of the police department's policies. Pet. Ex. 3.[1] Specifically, the article stated that Officer Chapman "was found to have committed four violations of the Internet Crimes Against Children Task Force Memorandum of Understanding" ("MOU"). *Id.* According to an internal investigation, Officer Chapman was found to have "electronically upload[ed], transmit[ted], or forwarded" sexually explicit child pornography over the internet during his investigation of Fridman, which is expressly prohibited by the MOU. *Id.*

Fridman's claim for habeas relief is based on Officer Chapman's violations of the MOU. Fridman claims that he was deprived a fair trial due to "prosecutorial and police misconduct." Specifically, Fridman claims that Officer Chapman's violation of the MOU would have been impeachable evidence at trial, and prosecutors violated his *Brady* rights by withholding it prior to his guilty plea. Pet. 8-12. There are three elements of a *Brady* claim: (1) The evidence must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) that evidence must be suppressed by the state, either willfully or inadvertently; and (3) prejudice

---

[1] InsideNova is a northern Virginia news source. *See* http://www2.insidenova.com/news/2010/jul/22/police_officer_resigns_rather_than_face_termina tio-ar-428513/

must have ensued. Prejudice requires a showing that there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense. *Strickler v. Greene*, 527 U.S. 263, 280-82 (1999); *United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2006). As such, Fridman contends "[a]t a minimum, the information could have been used to impeach Chapman's credibility at trial. The suppression of this information appears to be willful based on the widespread investigation the Dumfries Police Department is currently undergoing under the jurisdiction of the FBI." Pet. 11.

The petitioner alleges "[o]nly recently did Fridman and his current attorney learn of Chapman's forced resignation and the investigation of the Dumfries Police Department and that there may be a connection to Fridman's case." Pet. 7. In an affidavit, Fridman states that he would not have pled guilty if he had known of the connection between Officer Chapman's misconduct and his conviction. Fridman Aff. ¶ 13. Fridman attests that these previously suppressed facts could not have been discovered through due diligence prior to July 28, 2011. *Id.* at ¶ 14.

In its Motion to Dismiss, the government argues for dismissal on three separate bases: (1) the federal statute of limitations has passed; (2) the claim is barred via state procedural rules; and (3) the petitioner's argument fails on the merits because *Brady* material does not have to be disclosed prior to a plea. The Court agrees with the government and dismisses the petition on all three bases.

## II. Discussion

### A. *Federal Statute of Limitations*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides a one-year statute of limitations for claims, measured from the date the petitioner's conviction becomes final. 28

U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."). That time frame is tolled if, unlike here, the petitioner files a state habeas petition. 28 U.S.C. § 2254(d)(2). Where the petitioner does not file a state petition, the date begins to run from the "later" of the "date on which the judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review" or, relevant here, "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §§ 2244(d)(1)(A) and (D). Fridman pled guilty on July 28, 2009 and was sentenced on August 3, 2009; he did not file a direct appeal, and the time within which to file such an appeal is 30 days. Va. Sup. Ct. R. 5A:6. Therefore, petitioner's claims began running on September 2, 2009, and the statute of limitations expired on September 2, 2010. However, petitioner argues that the basis for the claim, *i.e.* Officer Chapman's misconduct and the government's withholding of that information, could not have been discovered until after July 28, 2011 and, therefore, that is the date from which the time should begin running for his claim under § 2254(d)(1)(D). Pet. 8-9. Specifically, Fridman claims that the violations "could not have been discovered through due diligence because though requested on numerous occasions by Fridman's attorneys, respondent refused to provide the information . . . ." Pet'r Reply 2. The government responds that Fridman knew of the conduct at issue on July 12, 2007, the day of the online chat between him and Officer Chapman, because Fridman was party to a chat where Officer Chapman violated the MOU; thus, Fridman knew of Officer Chapman's conduct prior to his conviction, which would prevent any tolling of the statute of limitations. Alternatively, the government argues that Fridman knew of Officer Chapman's conduct, or would have through due diligence, when the articles about Officer Chapman's suspension and subsequent resignation

4

came out in July 2010, and causing the time to file to expire in July 2011 and making the claim
time-barred based on those dates.

In *Green v. Johnson*, the Fourth Circuit addressed the issue of when information could be
discovered through the exercise of due diligence in the context of a habeas claim. 515 F.3d 290
(4th Cir. 2008). There, the petitioner brought a claim of ineffective assistance of counsel
because his trial counsel did not appeal his sentence. *Id.* at 303. The Court held that the time
began to run on that claim "no later" than the date habeas counsel was hired, because trial
counsel's failure to appeal had been "public knowledge for at least two years and therefore could
have been discovered through the exercise of due diligence" when habeas counsel was hired. *Id.*
at 305. Likewise, in *Wade v. Robinson*, the Fourth Circuit held that the time within which to
bring a habeas claim began to run when the "factual predicate" of the claim could have been
discovered through "public sources." 327 F.3d 328, 333 (4th Cir. 2003).

In *Owens v. Boyd*, an oft-cited Seventh Circuit case on the issue, the court held that it is
the petitioner's awareness of the factual predicate of the claim and not the petitioner's awareness
of the legal significance of that factual predicate which is controlling for purposes of calculating
the statute of limitations. 235 F.3d 356, 359 (7th Cir. 2001). The court explained that most
habeas petitioners are not lawyers and thus would not be aware of legal significances of certain
facts; thus, relying on when the petitioner becomes aware of the legal significance of the factual
predicate of his or her claim would effectively eradicate the statute of limitations provision. *Id.*
Instead, an objective measure as to when the petitioner became aware, or should have become
aware, of the factual predicate is the appropriate measure. *Id.* "Time begins when the prisoner
knows (or through diligence could discover) the important facts, not when the prisoner
recognizes their legal significance." *Id.* *See also*, *McCullough v. Virginia*, No. 3:10cv698, 2012

WL 12422, *2 (E.D. Va. Jan. 3, 2012) (citing *Owens* with approval); *United States v. Davis*, No. 3:07cr415, 2011 WL 6396555, *3 (E.D. Va. Dec. 20, 2011) (same); *Ridley v. Clarke*, No. 2:10cv387, 2011 WL 796671, *2 (E.D. Va. Jan. 13, 2011) (same).

In another oft-cited case out of the Fifth Circuit, *Flanagan v. Johnson*, the defendant was called to testify and, as he claimed in his habeas petition, his trial counsel did not tell him he could refuse to testify. 154 F.3d 196, 197 (5th Cir. 1998). After his conviction, the defendant sought an affidavit from his trial counsel to help prove his claim in a federal habeas proceeding, but the defendant could not find trial counsel (who had been subsequently disbarred) to get the affidavit until 1996, seven years after his conviction. *Id.* at 198-99. The defendant argued that the affidavit served as the factual predicate to his claim. *Id.* The Fifth Circuit rejected that interpretation of § 2244(d)(1)(D): "[Petitioner] is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim . . . Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, in this case more than seven years, while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Id.* at 199. The defendant became aware of his right to refuse to testify in November 1992, so the statute of limitations began to run from that date, and not the date he was able to provide trial counsel's affidavit. *Id.*

Using *Owens* and *Flanagan* as guidance, the issue here is when Fridman became aware of the factual predicate to his claim, or would have become aware of it through reasonable diligence. The Court must first determine what the factual predicate of the claim is; it is either (1) the fact that Officer Chapman sent the MOU-violating pictures to Fridman or (2) the fact that Officer Chapman's sending the pictures violated the MOU. If it is the former, then the statute of limitations began when Fridman's conviction became final because he had personal knowledge

6

that Officer Chapman sent the pictures; if it is the latter, then the statute of limitations would run from the date Fridman would have discovered Officer Chapman's actions violated the MOU if Fridman had exercised due diligence. The government argues that the factual predicate is simply the knowledge that Officer Chapman sent explicit photos to criminals, which Fridman had known because he was party to one such event. However, Fridman's *Brady* claim is not based on the "fact" that Officer Chapman sent him photographs; his claim is based on the "fact" that Officer Chapman violated an internal MOU. In other words, the fact that Officer Chapman violated the MOU is the factual predicate and the legal significance of that fact is that such information would be useful to impeach Officer Chapman's testimony. The simple fact that Officer Chapman sent Fridman the photographs would not have had an adverse effect on Officer Chapman's testimony; in actuality, it likely would have been useful information for the government to elicit on direct examination. However, the fact that such a transmission violated internal policies would have an impeaching effect on Officer Chapman's testimony, and is the true factual predicate in this case.

Having determined that the factual predicate to Fridman's claim is that Officer Chapman violated the MOU, the inquiry shifts to when such information could have been discovered through due diligence. Here, there was an InsideNova News article published about Officer Chapman's violations, and subsequence resignation, on July 22, 2010. Pet. Ex. 3. That article, had Fridman read it, would have put him on notice that the specific officer which assisted in apprehending him had abused internal protocols in his pursuit of criminals.

A habeas petitioner who "merely alleges that he or she did not actually know the facts underlying his or her claim does not thereby demonstrate due diligence" under § 2244(d)(1)(D). *Magano v. Mims*, No. 3:10cv525, 2011 WL 4073260, *8 (E.D. Va. Sept. 13, 2011) (quoting *In re*

7

*Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997)). The petitioner "must explain why a reasonable investigation would not have unearthed the facts prior to the date under which the limitation period commenced under 28 U.S.C. § 2244(d)(1)(A)." *Id.* (citing *Boshears*, 110 F. 3d 1540-41). Specifically, "[d]ue diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option." *Id.* (quoting *Anjulo-Looez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008)). However, due diligence "at least requires that a prisoner make *reasonable* efforts to discover the facts supporting his claims." *Id.* (citing *Anjulo*-Looez, 541 F.3d at 818) (emphasis in original). And, finally, in evaluating a petitioner's diligence, "the Court must be mindful that the 'statute's clear policy calls for promptness.'" *Id.* (quoting *Johnson v. United States*, 544 U.S. 295, 311 (2005) (holding that a petitioner's *pro se* status and procedural ignorance were no excuse for prolonged inattention)).

    *Wade v. Robinson* provides guidance to this rule's application here. In that case, the state rescinded the defendant's good conduct credits when he violated parole. *Wade*, 327 F.3d at 330. Four years later, he filed a federal habeas petition challenging the revocation on constitutional grounds. *Id.* The Fourth Circuit held that his claim was barred because "Wade's good conduct credits were rescinded by operation of law, and on that date Wade could have discovered through public sources that such had occurred." *Id.* at 333. Here, Officer Chapman's violation of the MOU was published on July 22, 2010 on InsideNova's website, among other online sites. Fridman would not have had to spend much time researching his case to learn of Officer Chapman's misconduct as that misconduct was in the public sphere. As such, if Fridman had exercised "due diligence," he would have learned of Officer Chapman's misconduct through the published articles, causing the statute of limitations under § 2244(d)(1)(D) to begin running

well over a year prior to the petitioner's filing date of September 16, 2011. The statute of limitations, therefore, expired prior to petitioner's claim being filed.

### B. *State Procedural Bar*

The government also contends that Fridman's claim fails because his claim is defaulted under state procedural law and thus barred from being heard in federal court. Specifically, "a federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). A petitioner's duty to exhaust is outlined in the statute: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c); *Baker*, 220 F.3d at 288. However, "a claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is *clear that the claim would be procedurally barred* under state law if the petitioner attempted to present it in state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (emphasis added). "[T]he procedural bar that gives rise to exhaustion [also] provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Id.* (quoting *Gray*, 518 U.S. at 161); *see also Yeatts v. Angelone*, 166 F.3d 255, 261-62 (4th Cir. 1999) (holding that it was appropriate to dismiss the habeas petition based on a state procedural default when it was "obvious" the petitioner's claim would be defaulted under state law).

Fridman has not presented his current habeas claim to any state court. Under Virginia law, a habeas claim must be brought "within two years from the date of final judgment in the

trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code Ann. 8.01-654(A)(2). Because Fridman did not appeal his conviction, his claims began running on July 28, 2009 and expired on July 28, 2011. This petition was filed on September 16, 2011, making the claim clearly barred from being heard in state court, which results in the claim being simultaneously exhausted in state court and defaulted in federal court. Because his claim is defaulted, Fridman would have to show "cause or prejudice" for the default to save his claim, but he cannot do so. As discussed under the previous section, Officer Chapman's misconduct became public knowledge in July 2010. There was no "cause," then, that prevented Fridman from learning that information and then pursuing the claim in a state habeas proceeding.

### C. *Merits of the Brady Claim*

Although the petitioner is barred based on the applicable statute of limitations and the procedural bar as discussed above, the Court will nevertheless consider the substance of petitioner's claim, which the Court finds meritless. Fridman claims that he would not have pled guilty had he known about Officer Chapman's MOU violations and that such evidence would have been material in the form of impeaching evidence at trial. In *Moussaoui,* the defendant entered a guilty plea and the district court then conducted a sentencing phase trial to determine whether the death penalty would be an appropriate sentence. 591 F.3d at 275-78. After the jury sentenced Moussaoui to life, he sought to withdraw his guilty plea because he realized, after not receiving a death sentence from the jury, that he could receive a fair trial in the United States. *Id.* at 278. He argued that the government wrongfully withheld exculpatory evidence from him before he entered his guilty plea and as such his *Brady* rights were violated. *Id.* at 285. The Fourth Circuit rejected this challenge, explaining

> [t]he Brady right, however, is a *trial* right. It requires a prosecutor to disclose evidence favorable to the defense if the evidence is material to either guilt or punishment, and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty. When a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted.

*Id.* (internal citations omitted) (emphasis in original). *See also Matthew v. Johnson*, 201 F.3d 353, 361 (5th Cir. 2000) (explaining that "[t]he *Brady* rule's focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation"); *Orman v. Cain*, 228 F.3d 616, 617 (5th Cir. 2000) ("*Brady* requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty.").

     *Moussaoui* accords with the Supreme Court's holding in *United States v. Ruiz*, where the Court expressly held that impeachment evidence does not have to be turned over prior to a guilty plea. 536 U.S. 622, 629-33 (2002). The Court explained that *Brady* relates to fair trial rights, while a guilty plea requires only that the defendant knowingly waive his constitutional rights: "Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be. But the Constitution does not require the prosecutor to share all useful information with the defendant [for the plea to be adequate]." *Id.* As long as the defendant is sufficiently aware of the nature of the right he is waiving, he does not need to be aware of the specific, detailed consequences of waiving that right. *Id.*[2] These considerations, among others, led the Court to conclude "that the

---

[2] "A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide." *Ruiz*, 536 U.S. at 629-630.

Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

The application of this rule is clear here: even if Officer Chapman's actions would have been material to Fridman's case, the government did not have a *Brady* obligation to turn that information over prior to a guilty plea and, thus, Fridman was not entitled to the information he contends the government withheld. Therefore, Fridman's entire petition fails on the merits because there is not a cognizable *Brady* claim.

### III. Conclusion

In conclusion, the petition should be dismissed on three separate grounds: (1) the federal statute of limitations has expired because petitioner would have discovered the factual predicate to his claim more than a year ago if he had exercised due diligence; (2) because petitioner did not file his claim first in state court, and that claim would now be procedurally barred in state court, his claim is defaulted in federal court because there is no "cause" for his failure to file a state petition first; and (3) there is no *Brady* right unless the defendant goes to trial. As such, the petition is dismissed and, given that there are three separate bases for dismissal, the Court will not issue a certificate of appealability.

The Court will issue an appropriate Order.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 12 , 2012